occurred was defective and there was no question submitted to the jury as to defective construction. Even though this leak had existed from November or a date prior thereto until February, 1904, when it was repaired, there is no evidence to charge the defendant with any notice thereof. The winter was a severe one. The ground was frozen. The odor of the gas could not, therefore, come up through the ground. The defendant company was not authorized or required to be snooping around peoples' houses to find possible leaks where no complaints had been made. The only evidence that this was discoverable at all outside of this house at 158 Grand street is the evidence of the witness Frank Owens who swears:

"The gas came out of the basement. When you sat on the stoop nights you could smell it; we used to sit out there. Come up through the stairway."

It is apparent, therefore, that he only discovered the leak by reason of the open stairway and the gas coming from the inside of the house. Defendant's employés were constantly passing and repassing, and swear that they discovered no smell of gas upon the street. The evidence of a single witness that he discovered the smell of gas upon a veranda off from the street, even though the gas did not come from the interior of the house, would not be sufficient to give constructive notice to the defendant, because it is not a place where an inspector would naturally go to find if gas were leaking. There is no question that a sufficient force was kept on hand to repair all leaks of which the defendant had notice, or claim that this leak was not promptly repaired as soon as the defendant had notice thereof. It is true that in November a gas meter was put into this house, and in December the gas meter was read by an employé. There is no proof, however, that any gas was then discovered, and no judgment can rightfully rest upon the possibility that such employés might have discovered gas at that time. We can find nothing in this case which shows that the defendant was guilty of any fault or of any negligence in failing to repair a leak of which it confessedly had no actual notice, and which could not be ascertained by its employés except in unnatural ways.

The judgment and order should, therefore, be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

———————

McGUIRE v. UNION MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. June 27, 1906.)

INSURANCE — LIFE POLICY — EXTENDED INSURANCE — STIPULATIONS — CONSTRUCTION..

An insured, in a 10-year term life policy, which stipulated for an annual premium of $134.60, and which authorized the exchange for a policy on any other plan, exchanged it for a regular policy for a like amount, calling for an annual premium of $232, and providing that, in case of lapse for nonpayment of premium after payment of three annual premiums, the holder should be entitled to the benefits of the provisions relating to extended insurance. The insured paid two annual premiums under the second policy, and failed to pay further premiums. *Held* that, as the two policies were different, the second policy must be

governed by its terms, and the insured was not entitled to the benefits of the provisions relating to extended insurance, though he had paid one annual premium under the first policy.

Appeal from Trial Term.

Action by Patrick McGuire against the Union Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

One Batcheller took from the defendant, March 8, 1898, a 10-year term policy for $5,000 on his life, payable to his wife, the annual premium of which was $134.60. The policy provided that, while it was in force, the insured could exchange it for a policy of like amount upon any plan then issued by the company, except a term policy, by paying the premium and rate called for thereby at the then age of the insured, without medical examination. March 6, 1899, the insured took a regular life policy, for like amount, which called for an annual premium of $232, in place of the term policy, and paid only two premiums upon it. March 15, 1901, the company received the note of the insured due July 15, 1901, for the third premium, which provided that, if it was not paid at maturity, the policy lapses for nonpayment. The note was not paid, and no other payments were made upon the policy. The insured died February 18, 1904, and the policy was assigned to the plaintiff. The policy provided that, "in case of lapse for nonpayment of premium after payment of three full years' premiums in cash, this policy is entitled to the benefits of the Maine nonforfeiture law, securing the insurance from the date of this policy for the terms specified in the following table." The table showed that, where three full premiums were paid, the policy remained in force for five years and 272 days from its date.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Howard B. Bayne, for appellant.
Horton D. Wright, for respondent.

JOHN M. KELLOGG, J. The claim of respondent that the two policies constitute a continuing contract, so that the one premium paid under the term policy and the two premiums paid under the life policy make the three annual payments under the latter policy, and extend the insurance by virtue of the Maine nonforfeiture law, cannot be sustained. The policies are different. The rate of premium is different, and each was a separate contract in itself. The holder of the term policy, if he desired, by its terms was enabled to obtain other insurance in its place without a medical examination. The other insurance when taken must be governed by the terms of the policy taken. It is not necessary to consider whether the notice required by section 92 of the Insurance Law (chapter 690, p. 1972, Laws 1892, as amended by chapter 218, p. 92, Laws 1897) was mailed or not, for this action was not brought within one year from the default day, as required by that section, and the note given for the premium expressly provided that the policy should lapse for nonpayment, if it was not paid at maturity.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.